Argued and submitted September 3, affirmed December 8, 1980

GOODSON,
*Respondent,*
*v.*
GENERAL TELEPHONE COMPANY
OF THE NORTHWEST, INC.,
*Third Party Plaintiff-Appellant,*
*v.*
MYHRAN,
*Third Party Defendant-Respondent.*
(No. 39-672, CA 16591)

620 P2d 926

Donald C. McClain, Portland, argued the cause for third party plaintiff, appellant. With him on the briefs was Whipple, Johansen & McClain, Portland.

Raymond J. Conboy, Portland, argued the cause for respondent. With him on the brief were Garry L. Kahn and Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Carrell F. Bradley, Hillsboro, argued the cause for third party defendant-respondent. He joined in respondent Goodson's brief by written stipulation.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

**THORNTON, J.**

This is an appeal, following jury trial, from a judgment entered in favor of plaintiff for injuries suffered in an automobile accident. Defendant raises three assignments of error:

1) The trial court erred in ordering production at trial of two statements made by defendant's employe without granting defendant an opportunity to establish that such statements were subject to a work product or attorney/client privilege.

2) The trial court erred in failing to remove from the jury's consideration plaintiff's claim for damages based on complications which arose from Coumadin therapy.

3) The trial court erred in failing to properly instruct the jury on the basic speed rule.

The following are the essential facts:

The accident occurred at about 5:30 p.m. Plaintiff approached the intersection in question traveling west and came to either a full stop or a "rolling stop." Her view of the north-south through traffic was obscured by the presence of two of defendant's large trucks and an air compressor at the southeast corner of the intersection where defendant's employes were engaged in pulling cable through underground conduits from an intersection further north. On both sides of the intersection, the north-south street, which otherwise is two-lane, broadens to include left-turn lanes. Defendant, whose operation occupied the northbound lane, had warning lights flashing and had placed cones behind its equipment to direct traffic around it. At the time of the accident, defendant's employes were in the process of removing the equipment for the night. Plaintiff proceeded into the intersection, where she was struck by third-party defendant Myhran who was traveling north. Both plaintiff and Myhran testified that they had not seen each other in time to avoid impact.

Plaintiff's complaint alleged that defendant was negligent in one or more of three particulars: in failing to provide a flagperson or signal device to warn motorists of approaching traffic, in failing to actually warn plaintiff of

oncoming traffic, and in impairing the view of motorists at that intersection. Defendant denied these allegations and filed an affirmative defense that plaintiff had been negligent herself in failing to stop fully or keep a proper lookout at an obviously dangerous intersection. Subsequently, defendant filed a third-party complaint against Myhran alleging that he was totally or partially negligent and that defendant was entitled to contribution for any of plaintiff's injuries for which it was responsible. The jury found for plaintiff and held defendant 100 percent liable.

Within a day or two of the accident, defendant's employe, Meeuwsen, made a telephone report to defendant's safety department. The woman he talked to made notes summarizing the content of Meeuwsen's report. After defendant received plaintiff's complaint, an adjuster from its insurance company, allegedly at the instance of defendant's counsel, obtained a full tape-recorded statement from Meeuwsen. Plaintiff first learned that Meeuwsen had made a report of the accident during Meeuwsen's deposition a week prior to trial.[1] It is unclear whether plaintiff was aware of both the summary and the recorded statement at that time.

At trial, on cross-examination of Meeuwsen, Myhran's counsel demanded production of whatever statements Meeuwsen had made. A lengthy discussion in chambers followed during which it became clear that two statements were involved. Defense counsel asserted both work product and an attorney/client privilege to prevent disclosure of either statement. The discussion was adjourned overnight to permit defense counsel to research the question whether the work product exemption from discovery

---

[1] "'QUESTION: Did you file an accident report for your company?

"'ANSWER: Yeah.

"'* * * * *  .

"'MR. KAHN: May I see the accident report that you filled out?

"'Mr. McCLAIN: No, that's in our possession and not available for your use.  .

"'MR. KAHN: Well, it would be available for trial.  '.

"'MR. McCLAIN: Well, that's what you say.'" (Excerpt from deposition proceedings read to the court.)

was applicable to production of a witness' statements at trial when the witness has testified on the matter. The following morning the debate continued. With respect at least to the recorded telephone report, defendant again asserted that an attorney/client privilege applied. Defense counsel stated, however, that he was unable to obtain the necessary affidavits from defendant's general counsel in Everett, Washington, to establish that the statement had been taken at an attorney's request because he had not anticipated that plaintiff would attempt to compel production at trial. The trial court ordered defendant to make both statements available to plaintiff. The statements were used at trial to contradict some of Meeuwsen's testimony. Neither was introduced into evidence.

■■    Defendant states its first assignment of error as follows:

> "The Court erred in allowing counsel for plaintiff and for third-party defendant to review and use during trial Exhibits 24 and 25 on the ground that defendant was entitled to a hearing on attorney/client and work product privileges and upon the further ground that Exhibit 25 [the recorded statement] is not a statement by a witness subject to disclosure as determined by the Trial Court."

It is apparent from the transcript that the trial court denied defendant a hearing on this issue only in the sense that it failed to allow a continuance for defendant to procure the necessary affidavits to show that the statements were taken at the request of defendant's general counsel in anticipation of and for use in litigation. *See Brink v. Multnomah County,* .224 Or 507, 517, 356 P2d 536 (1960). Continuances are within the discretion of the trial court and may be reviewed only upon a showing that such discretion was abused. *Sims v. Sowle,* 238 Or 329, 331, 395 P2d 133 (1964). We conclude that the trial court did not abuse its discretion in denying defendant further time to assert its claims. It is clear from Meeuwsen's deposition that defendant was aware that plaintiff intended to seek production at trial of whatever statements Meeuwsen had made. Defendant was therefore not surprised by plaintiff's motion to have the statements made available. By failing to prepare for this contingency, defendant cannot be heard to object on appeal to production or use of the statements.

We need not address the question of whether either work product or an attorney/client privilege were available in this case.

In response to defendant's second assignment of error—that the court erred in failing to withhold from the jury's consideration the question of plaintiff's damages resulting from Coumadin treatment—plaintiff contends that the question is not preserved for consideration on this appeal.[2] At the close of plaintiff's case, defendant made a motion for involuntary nonsuit on the ground that plaintiff had failed to prove defendant was negligent in any respect. That motion was denied. Thereafter, the discussion turned to whether there was evidence to support some of plaintiff's allegations of damages. At this point, the following colloquy occurred:

"THE COURT:  * * * Okay. Now, what about the pulmonary embolism?

"MR. KAHN [plaintiff's attorney]: He didn't move against that.

"THE COURT:  There was that —

"MR. KAHN:  He didn't move against that.

"MR. McCLAIN [defendant's attorney]: Well, I am now moving against what's contained on line 11 and part of line 10 [of the complaint], the phrase which says, "Which in turn caused complications as a result of her Coumadin therapy."

"THE COURT: [']Aggravates pre-existing condition of arthritis.[']

"MR. KAHN:  I don't object to that.

"THE COURT:  Then 'aggravation of pre-existing arthritis'; is that in there?

"MR. KAHN:  Case says it is.

"THE COURT:  Okay."

---

[2] Plaintiff's complaint alleged damages as follows:

"As a result of the negligence of the defendant, through its officers, agents and employees, a collision occurred in the intersection causing plaintiff nervous shock, physical and mental pain and suffering, tearing, twisting and wrenching of the muscles, ligaments and soft tissue of her chest area and pelvis area, fractures of ribs on the left side, fractures on the left side of her pelvis, *a pulmonary embolism which in turn caused complications as a result of her Coumadin therapy, aggravation of a pre-existing condition of arthritis,* from all of which plaintiff has been rendered sick, sore, nervous and distressed, and sustained injury which may be permanent, all to plaintiff's damage in the sum of $75,000.00." (Emphasis added.)

No further discussion of the matter occurred. When the trial court instructed the jury, it read the allegations of damage remaining in the complaint including damage from Coumadin therapy. No exception was taken to this instruction.

■ Defendant contends that the proper motion was made and that the trial court *implicitly* denied it by later reading the allegation to the jury. We conclude, however, that the claim was not preserved. In *Shields v. Campbell,* 277 Or 71, 77-78, 559 P2d 1275 (1977), our Supreme Court stated:

"* * * A party owes the trial court the obligation of a sound, clear and articulate motion, objection or exception, so as to permit the trial judge a chance to consider the legal contention or to correct an error already made. [Citations omitted.] The reason for such a rule is not merely to promote form over substance but to promote an efficient administration of justice and the saving of judicial time."

On the strength of the record before us, we cannot say that the trial court's subsequent instruction which included the claim for damages from Coumadin therapy amounts to a denial of defendant's motion. There was no discussion of the matter and it is unclear whether the court's attention was ever focused on defendant's precise contention. In the absence of a specific ruling, we believe it was incumbent on defendant to have excepted to the court's jury instruction or otherwise brought the matter to the trial judge's attention.

■ Defendant's final assignment of error is that the court failed to properly instruct the jury on the basic speed rule, which went to its allegation that plaintiff and Myhran were negligent in driving too fast under the circumstances. Defendant requested Uniform Jury Instruction 70.01 (covering the basic speed rule), which the court read to the jury. On appeal, defendant's contention is that the court erred in failing to modify the uniform instruction to reflect changes made in 1975 to the statute (ORS 487.465) upon which the instruction is based. These changes injected "weather" and "visibility" into the statute as factors which must be considered by drivers in determining a safe speed. Defendant made a timely exception to the instruction on the ground that it did not include "visibility" as an element of consideration and contends on appeal that such an instruction is crucial to its defense.

The trial court gave the precise instruction requested by the defendant. We hold that there was no abuse of discretion in failing to reinstruct because the uniform instruction informed the jury that basic speed is governed in part by the "hazard at intersections, and any other conditions then existing." From this instruction, in light of the evidence and other instructions, a juror would readily conclude that impaired visibility at the intersection was an important factor in determining whether plaintiff and Myhran were driving too fast. It was not an abuse of the trial court's discretion to refuse to reinstruct based on a mere enlargement of the instruction given. *Laubach v. Industrial Indemnity Co.,* 286 Or 217, 225, 593 P2d 1146 (1979).

Affirmed.